**MERCHANTS DESPATCH TRANSPORTATION CORPORATION, Plaintiff,**

v.

**SYSTEM FEDERATION NUMBER ONE RAILWAY EMPLOYEES' DEPARTMENT, AFL–CIO, CARMEN, formerly known as the Brotherhood of Railway Carmen of America System Federation Number 103, Defendants.**

No. 75 C 2972.

United States District Court,
N. D. Illinois, E. D.

March 10, 1978.

Peter V. Fazio, James E. Spiotto and Mark P. Cohen, Chapman & Cutler, Chicago, Ill., for plaintiff.

Michael S. Wolly, Mulholland, Hickey, Lyman, Washington, D. C., Alex Elson, Aaron S. Wolff, Elson, Lassers & Wolff, Chicago, Ill., for defendants.

## MEMORANDUM OPINION

GRADY, District Judge.

Before the court is defendant System Federation's motion for summary judgment and enforcement of Award No. 386 of Special Board of Adjustment No. 570. We will grant summary judgment on all three Counts.

This action was brought by plaintiff Merchants Despatch to review an adverse deci-

sion by the Special Board. Merchants Despatch and System Federation are party to a collective bargaining agreement which provides protective benefits for employees displaced because of changes in the employer's operations, but does not provide benefits for changes caused by a decline in business. Merchants Despatch closed its New Orleans facility in May of 1973, furloughing all carmen. The company did not post a 60-day notice of the abolition of all New Orleans jobs, nor did it provide protective benefits to the affected employees. The Special Board found that the abolition of the New Orleans shop was due to an operational change (the cancellation of Merchants Despatch's tenancy on the New Orleans property), and was not caused by a decline in business. The Board also rejected Merchants Despatch's argument that the employees' claim was barred by the time limit provisions of the September 25, 1964 agreement. Accordingly, the Board awarded the claimants pro rata remuneration for time lost due to the failure of the corporation to provide the 60-day notice, as well as the protective benefits provided employees by Article I of the September 25, 1964 agreement.

*Standard of Review*

We agree with the parties that there is no reason to apply a different standard of review to an award by a Special Board than is applied to awards of the National Railroad Adjustment Board or the public law boards.[1] Thus, we will apply the statutory standards of Section 3 First (p) and (q), 45 U.S.C. § 153, First (p), (q), which provide that a board order may only be set aside for the following reasons:

(1) failure to comply with the requirements of the chapter,

---

1. We are aware of the Seventh Circuit's holding in this case on appeal to the effect that the provision for judicial review of public law boards which makes § 153 First (q) applicable to public law boards as well as the statutory board does not apply to the voluntary special boards of adjustment. Nonetheless, in holding further that the district court has jurisdiction to review the awards of special boards of adjustment, the court noted that "the needs of the subject matter manifestly call for uniformity." *Merchants Despatch Transportation Corp. v. Systems Federal Number One Railway Employees' Department AFL-CIO Carmen,* 551 F.2d 144, 152 (7th Cir. 1977). As noted by the parties, this need for uniformity, taken in conjunction with the similarity of purpose of the three types of boards, points to the logic of applying the same standard of review to all railroad board awards.

(2) failure of the order to conform, or confine itself to matters within the board's jurisdiction, or

(3) fraud or corruption by a member of the board making the order.

See *United Transportation Union v. Southern Pacific Transportation Co.*, 529 F.2d 691 (5th Cir. 1976); *United Transportation Union v. Soo Line Railroad Co.*, 457 F.2d 285 (7th Cir. 1972). Unless the plaintiff demonstrates one of the above grounds for reversal, the award of the Special Board will not be disturbed. This court has no authority to relitigate the merits of the claims presented to and decided by the Board.

*Count I—Procedural Defects*

 Merchants Despatch alleges three basic defects in the Board's award which it claims warrant reversal of the decision. In Count I, the plaintiff attacks the award on due process grounds claiming that the Union made fraudulent misrepresentations to the Board which Merchants Despatch was unable to rebut in a full hearing. There appears to be no question but that the procedures established by Article VI of the Labor Agreement were followed. Article VI provides that decisions are to be made based on written submissions by the parties, simultaneously submitted, without oral testimony. By adopting the terms of the September 1964 Labor Agreement, Merchants Despatch agreed to follow this procedure for settling disputes. Labor and management may contract privately to resolve disputes with less than a full evidentiary hearing without infringing on due process. *Cf. Edwards v. St. Louis-San Francisco Railroad Co.*, 361 F.2d 946, 953–55 (7th Cir. 1966). Since Merchants Despatch agreed to the procedural terms of Article VI, and those procedures were followed in this case, there is no due process violation.[2]

2. The contracted for procedures do not conflict with the terms of the Act. Section 157 hearing requirements do not apply to a Special Board established pursuant to Section 153.

3. Plaintiff also claims that the award fails to conform with the Labor Agreement in that the Union claimed for the first time in its submission to the Board that the plaintiff violated

 Moreover, as evidenced by the exhibits to the complaint, Merchants Despatch was given an opportunity to respond to the Union's submissions. *See* Exhibit 28, letter from H.F.M. Braidwood, carrier member, soliciting Merchants Despatch's comments to the employees' submission; and Exhibit 32, letter from Merchants Despatch to Mr. Braidwood responding to the Union's prior written submission. This opportunity for rebuttal went beyond the contracted for procedures. These facts are presented in the complaint and are not disputed by the Union. Based on these factual allegations, we hold, as a matter of law, that the arbitration procedures utilized in this case did not operate to deprive the plaintiff of due process. Accordingly, summary judgment is granted for the defendant on Count I.

*Count II—Jurisdictional Defects*

The gravamen of Count II is that the Board exceeded its jurisdiction by considering the Memorandum of Understanding dated January 7, 1965, in addition to the Labor Agreement of September 25, 1964.[3] Merchants Despatch became bound by the terms of the September 25, 1964 agreement when, on March 30, 1965, it agreed to adopt the terms of the September 1964 Labor Agreement, "to be applied in the same manner and to the same extent" as though it were originally a party to the Labor Agreement.

Merchants Despatch now claims that it never agreed to the terms of the Memorandum of Understanding, never intended to be bound by the Memorandum, and further that it did not know the Memorandum existed until the Union filed this action with the Board. The effect of the Board's consideration of the Memorandum of Understanding was to relieve the Union from compliance with the time limit require-

Article I, Section 2(e), without giving adequate notice to the plaintiff or negotiating prior to submission. The Board found the cancellation of the lease to be either within 2(b) or 2(e). Since the award can be sustained purely on the grounds of 2(b), it is not invalidated by the inclusion of 2(e).

ments established in the original Labor Agreement.

 Merchants Despatch argues that the question of whether it agreed to the terms of the Memorandum of Understanding is a question of intent, and therefore it presents a question of fact which precludes summary judgment. We grant that the question of whether Merchants Despatch agreed to be bound by the Memorandum when it adopted the original Labor Agreement is a question of fact. *See Fitzsimmons v. Best*, 528 F.2d 692 (7th Cir. 1976). However, this question of fact was presented to and decided by the Special Board. The Board specifically found that Merchants Despatch's "ready acquiescence to comply with the terms and conditions of the September 25, 1964 Agreement also carried with it the Memo of Understanding dated January 7, 1965. This latter accord, as interpreted in many decisions of this Board, exempts the September 25, 1964 Agreement from the purview of the standard Time Limit Rule." *Special Board of Adjustment No. 570, Award No. 386*, p. 2. This issue was decided on its merits by the Board; we cannot relitigate the question of Merchants Despatch's intent concerning the September 1964 Agreement and the subsequent Memo of Understanding.

 Questions of contract interpretation are exclusively within the province of the arbitration board, not the court. Once the Board has interpreted the contract, as was done in this case, that interpretation cannot be reversed unless it is "wholly baseless and completely without reason." *Gunther v. San Diego & Arizona Eastern Railway Co.*, 382 U.S. 257, 261, 86 S.Ct. 368, 371, 15 L.Ed.2d 308 (1965); *Kotakis v. Elgin, Joliet & Eastern Railway Co.*, 520 F.2d 570 (7th Cir.), *cert. denied*, 423 U.S. 1016, 96 S.Ct. 451, 46 L.Ed.2d 389 (1975). We cannot say that the Board's interpretation fails to meet this standard. Merchants Despatch became party to the original September 1964 agreement through its adoption of those terms in the March 30, 1965 agreement. By agreeing to be bound as though it were an original party to the September

agreement, it is not unreasonable to conclude that subsequent modifications of the agreement would apply to Merchants Despatch.

 Under the terms of the September 1964 agreement, Article VI, the Board has jurisdiction to resolve disputes concerning employee protection benefits. There is no question that the underlying dispute concerns employee protection benefits. Therefore, the issue was clearly arbitrable, and indeed the parties submitted the question to arbitration without disputing the Board's jurisdiction. Once it appears that an arbitrable dispute exists, procedural questions involving time limits for presenting claims are questions to be resolved by the arbitrator. *See Operating Engineers v. Flair Builders, Inc.*, 406 U.S. 487, 491–92, 92 S.Ct. 1710, 32 L.Ed.2d 248 (1972). The court's authority to determine whether a given dispute falls within the Board's arbitration jurisdiction does not "extend to interpreting procedural provisions of the agreement to arbitrate once it appears that an arbitrable dispute exists." *Local 81, American Federation of Technical Engineers, AFL–CIO v. Western Electric Co., Inc.*, 508 F.2d 106, 109 (7th Cir. 1974).

Because Count II fails as a matter of law to present any of the grounds for reversing the award of the Special Board, we will grant summary judgment for the defendant Systems Federation on Count II.

*Count III—Fraud*

 Plaintiff's final count alleges that the award is invalid because the Union practiced fraud on the Board by intentionally making misrepresentations which misled the Board as to the facts in the case. The complaint cites a series of alleged misrepresentations made by the Union in its submission to the Board. These allegations are insufficient to state a basis for reversing the Board's decision under the statutory fraud standard. To justify setting aside an order, the fraud or corruption must be "by a member of the division making the order." 45 U.S.C. § 153 First (p), (q). Merchants Despatch claims fraud by a party to the proceeding; nowhere in the complaint is there any indication of fraud on the part

of any of the members of the Board. Since there is no indication that the Board, as constituted, "was not such an unprejudiced tribunal as could afford to [plaintiff] the fair and impartial hearing and decision that due process requires," *Hornsby v. Dobard*, 291 F.2d 483, 487 (5th Cir. 1961), Count III of the complaint must be dismissed as a matter of law.[4]

*Conclusion*

For the reasons stated above, summary judgment is hereby granted for the defendant Systems Federation; Award No. 386 of Special Board of Adjustment No. 570 is affirmed. Judgment will be entered for defendant on its counterclaim to enforce Award No. 386 pursuant to 45 U.S.C. § 153, First (p), and Second.

4. Even if we were to apply the broader standard of 45 U.S.C. § 159 Third (c), which includes fraud practiced by a party to the arbitration which affected the result, Count III would fail the test. The complaint alleges that the factual submissions by the Union contained intentional misrepresentations. The plaintiff had an opportunity to present its version of the facts when it filed its submission with the Board, and further to rebut the Union's statements when it responded to Mr. Braidwood's letter soliciting further comments. Under these circumstances, the company cannot avoid the enforcement of the award. The situation presented is not unlike that presented by a Rule 60(b) motion to set aside a final judgment on the grounds of fraud. In such cases, "it must appear that the fraud charged really prevented the party complaining from making a full and fair defense." *Toledo Scale Co. v. Computing Scale Co.*, 261 U.S. 399, 421, 43 S.Ct. 458, 67 L.Ed. 719 (1923). *Cf. Biotronik Mess-und Therapiegeraete v. Medford Medical Instrument Co.*, 415 F.Supp. 133, 138–39 n. 15 (D.N.J.1976).